IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION FILE<br>NO. 4:11-CR-17-RLV-WEJ |
| ROBERT RANDOLPH, | |
| Defendant. | |

**ORDER AND**
**<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

This matter is before the Court on defendant Robert Randolph's Preliminary Motion to Dismiss Indictment for Violation of the Due Process Clause [30] ("Preliminary Mot.") and Perfected Motion to Dismiss Indictment for Violation of the Due Process Clause [32] ("Def.'s Mot.").[1] For the reasons explained below, the undersigned **REPORTS** that defendant's motion is without merit and

---

[1] Defendant filed the Preliminary Motion on August 31, 2011. (See Preliminary Mot.) At the Pretrial Conference, he requested additional time to perfect the motion, which the Court granted. (See Sept. 1, 2011 Hearing [31].) Defendant filed the Perfected Motion on October 13, 2011. (See Def.'s Mot.) In disposing of these motions, the Court considers only the Perfected Motion.

**RECOMMENDS** that it be **DENIED**. Additionally, defendant's request for an evidentiary hearing is **DENIED**.

I. **STATEMENT OF FACTS**

Between 1979 and 1992, defendant, Robert Randolph, was convicted of several felony offenses. (See Superseding Indictment [23] ¶¶ 1-3.) Among other offenses, defendant has been convicted in Hamilton County, Tennessee, of attempted second-degree murder, felonious assault with intent to commit first-degree murder, and burglary. (See id.)[2] Hence, defendant is a convicted felon as contemplated by 18 U.S.C. § 922(g)(1), the crime with which he is charged. (See Superseding Indictment 1-2.)

---

[2] Second-degree murder is a Class A felony. Tenn. Code Ann. § 39-13-210(c). An attempted crime is graded as "one . . . classification lower than the most serious crime attempted." Id. § 39-12-107(a). Attempted second-degree murder is, therefore, a Class B felony, which carries a sentence of between eight and thirty years imprisonment. See id. § 40-35-111(b)(2). Felonious assault with intent to commit first-degree murder is no longer an offense in Tennessee. See Tenn. Code Ann. § 39-2-103 (repealed 1989); Fowler v. Carlton, No. E2004-01346-CCA-R3-HC, 2005 WL 645206, at *1 (Tenn. Crim. App. 2005). However, while in force, it carried a penalty of between five years and life imprisonment. Tenn. Code Ann. § 39-2-103(a)-(b) (repealed 1989). Depending on what kind of structure a burglar enters, burglary is a Class E or Class D felony in Tennessee, carrying a penalty of between one and twelve years imprisonment. See Tenn. Code Ann. §§ 39-14-402(c)-(d); 40-35-111(b)(4)-(5).

During July and August 2009, defendant worked for and discussed guns with J.H., who possessed them in large numbers. (Def.'s Mot. Ex. B [32-2], ¶¶ 3-4.) Defendant stated that he would like to go shooting, and, on or about July 31, 2009 and August 19, 2009, he and J.H. did so on J.H.'s Georgia property. (Id.) On both occasions, someone took pictures and video of defendant shooting the guns, a fifty-caliber State Arms rifle, a Beretta nine milimeter 92F pistol, and a Colt .45 pistol. (Id.) J.H. reported that he kept the guns locked in a shed on the Georgia property and that defendant saw where the key was hidden. (See id.) J.H. moved neither the guns nor the key after these shooting sessions. (Id. ¶ 6.)

In July or August 2009, defendant became interested in purchasing a Smith & Wesson handgun from J.H. and told him so. (Def.'s Mot. Ex. B, ¶ 5.) Defendant and J.H. arranged a purchasing plan under which defendant would receive the handgun after performing $400.00 worth of labor. (Id.) J.H. discussed this deal with S.T., who informed him that defendant was a convicted felon who could not own a gun. (Id.; see id. ¶ 3.) J.H. confronted defendant with this information, defendant quit angrily, and J.H. paid him the money he had earned. (Id. ¶ 5) Defendant called J.H. sometime later to ask for his job back, but J.H. refused because of defendant's

3

reaction when J.H. confronted him with his knowledge of defendant's criminal history. (Id.)

In October 2009, J.H. returned from a trip and discovered that the guns he had shot with defendant were missing from his shed. (Def.'s Mot. Ex. B, ¶ 6.) The hidden key was also missing. (Id.) Sometime during November 2009, defendant and Rick McWain came to K.C.'s residence in the middle of the night and knocked loudly at the door until she let them in. (Def.'s Mot. 2 & Ex. C [32-3], ¶ 3.) They had a long black pistol and a "huge firearm" that defendant referred to as a "[fifty] caliber." (Def.'s Mot. Ex. C, ¶ 5.) Defendant told her he had taken the guns from a former employer's Georgia property. (Id. ¶ 3.) He told her further that he had a key to the location where the guns had been stored and was angry that the dogs on the property had forced Mr. McWain and him to leave before they could disguise the scene as a random burglary. (See id. ¶ 4.) Defendant hid the fifty-caliber rifle in K.C.'s daughter's closet and the pistol in her daughter's dresser drawer. (Id. ¶ 5.) After K.C. told defendant she was afraid to have the guns in her residence and asked him to get rid of them, defendant sold (at least one of) them. (See id. ¶ 6.)

On April 26, 2010, ATF agents conducted the interviews in which they learned the facts recited above. (See Def.'s Mot. Ex. B, at 1 & Ex. C, at 1.) On

4

April 29, 2010, Special Agent Marnie R. Corbitt prepared reports listing the interviews' contents (see Def.'s Mot. Ex. B, at 1 & Ex. C, at 1), and Group Supervisor Chad D. Munn authorized them on April 30, 2010 (see Def.'s Mot. Ex. B, at 1 & Ex. C, at 1.) On December 22, 2010, Mr. McWain passed away. (Def.'s Mot. Ex. F [32-6], at 2.)

On April 26, 2011, the Government indicted defendant. (See Indictment [3].) On June 1, 2011, United States Marshals arrested him in Kentucky. (See Warrant and Return [10-1] 1.) This Court arraigned him on July 11, 2011. (See Minute Entry [11].)

On October 4, 2011, defendant's counsel e-mailed the Assistant United States Attorney assigned to the case, Teresa D. Hoyt, to ask why the Government had waited a year after it knew of the allegations against defendant to indict him. (See Def.'s Mot. Ex. G [32-7].) She did not respond. (See Def.'s Mot. 6.)

## II. THE CHARGING DOCUMENT

On April 26, 2011, the grand jury returned a one-count Indictment against defendant concerning a crime allegedly committed in the Northern District of Georgia. (See Indictment.) The Indictment charged that, on or about July 31, 2009 and August 19, 2009, defendant, having been convicted of crimes punishable by

5

imprisonment for more than a year, knowingly possessed a firearm in and affecting interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). (See Indictment.)

On August 16, 2011, the Government filed a Superseding Indictment (see Superseding Indictment), which eliminated reference to defendant's misdemeanor convictions but is otherwise identical to the first Indictment (Compare Indictment, with Superseding Indictment.)

### III. CONTENTIONS OF THE PARTIES

Defendant contends that the Government delayed excessively before indicting him, violating his rights under the Fifth Amendment's Due Process Clause. (Def.'s Mot. 3.) Defendant states that, although the Government knew no later than April 26, 2010, that he was a convicted felon and that J.H. and K.C. claimed to have witnessed him in possession of guns (id. at 2), it did not indict him until April 26, 2011, roughly twenty months after the alleged crime and nearly an entire year after completing its investigation (id.). Defendant contends that this year-long delay, during which Mr. McWain passed away, "caused him actual substantial prejudice." (Id. at 5.) Defendant also contends that the Government deliberately delayed indicting him to obtain a tactical advantage, although he concedes that he cannot

6

demonstrate this motivation without the Court's aid. (See id. at 5-6.) Consequently, defendant has requested an evidentiary hearing to "pierce the veil of prosecutorial decision-making" and ascertain the reason for the Government's delay. (Id.)

In response, the Government contends that defendant "[h]as [f]ailed to [s]how [a]ctual, [s]ubstantial [p]rejudice." (Gov.'s Resp. [34] 6.) Specifically, the Government denies that Mr. McWain's participation in defendant's case could have had any material effect on its outcome. (See id. at 7.) Additionally, the Government argues that defendant has failed to meet its burden to show that "the Government's delay was deliberate and for the purpose of obtaining a tactical advantage." (Id. at 8.) Finally, the Government argues that defendant's "[d]ue [p]rocess [c]laim does not [r]equire an [e]videntiary [h]earing." (Id. at 9.)

## IV. **ANALYSIS**

As a general principle, "[s]tatutes of limitations provide the primary guarantee against stale criminal charges." United States v. Weinstein, 762 F.2d 1522, 1542 (11th Cir. 1985) (citing United States v. Lovasco, 431 U.S. 783, 789 (1977)).[3] Nevertheless, the "'Due Process Clause has a limited role to play' in protecting

---

[3] The statute of limitations applicable in this case is five years. See 18 U.S.C. § 3282(a).

7

against the prejudice of pre-indictment delay." United States v. Butler, 792 F.2d 1528, 1533 (11th Cir. 1986) (citing Lovasco, 431 U.S. at 789).[4]

To show that the timing of the Government's indictment violated his right to due process, a defendant bears the burden of showing both "(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." Butler, 792 F.2d at 1533 (citing United States v. Warren, 772 F.2d 827, 836 (11th Cir. 1985)); see also United States v. Marshall, 360 F. App'x 24, 25 (11th Cir. 2010) (per curiam). "This standard is 'an exceedingly high one.'" Butler, 792 F.2d at 1533 (citing Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam)).

Courts will not presume prejudice exists "because of a lengthy delay in initiating prosecution," and "'[s]peculative allegations, such as general allegation of loss of witnesses . . . are insufficient to demonstrate the actual prejudice required . . . .'" Butler, F.2d 792 at 1533 (citing United States v. Radue, 707 F.2d 493, 495

---

[4] The Federal Rules of Criminal Procedure provide that a court may dismiss an indictment if there is "unnecessary delay" in "presenting a charge to a grand jury"; "filing an information against a defendant"; or "bringing a defendant to trial." Fed. R. Crim. P. 48(b). The rule is "a restatement of the inherent power of the court to dismiss a case for want of prosecution." Id., advisory committee's note.

8

(11th Cir. 1983)) (citation omitted). Additionally, while a defense witness's death can substantially prejudice a defendant, see United States v. Mills, 704 F.2d 1553, 1557 (11th Cir. 1983), "'[w]hen a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to prove a meaningful defense.'" Id. at 1533-34 (quoting Stoner v. Graddick, 751 F.2d 1535, 1541 (11th Cir. 1985)).

Similarly, the Government does not bear the burden of justifying a delay, and courts will not find that it intentionally delayed an indictment for tactical advantage unless a defendant shows with particularity that it did so. See United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995). A defendant need not show the Government acted in "bad faith"; rather, he must show merely that it made a judgment about how best to proceed with litigation that resulted in the indictment's delay. United States v. Foxman, 87 F.3d 1220, 1223 n.2 (11th Cir. 1996). However, mere "inaction in bringing the case is insufficient . . . to establish that the government's actions were motivated by an attempt to gain a tactical advantage." Butler, F.2d 792 at 1534. Additionally, in the event that "the record shows no reason for the delay (or where the delay is due to simple negligence), no due process violation exists." Foxman, 87 F.3d at 1223 n.2 (citing Stoner, 751 F.2d at 1543).

9

Finally, should a defendant fail to show deliberate delay for tactical advantage, a court need only "note that [the defendant] ha[s] failed to carry that burden." Thomas, 62 F.3d at 1339.

### A. **Actual, Substantial Prejudice**

Defendant's claim that the timing of the indictment caused him actual, substantial prejudice is without merit. As noted above, courts will not presume a defendant has been prejudiced when a potential witness dies during lengthy delay of an indictment unless the defendant can show the death "impaired his ability to prove a meaningful defense." Stoner, 751 F.2d at 1535. Mr. Randolph cannot make such a showing for two reasons. First, he has adduced no evidence suggesting that Mr. McWain would have testified on his behalf. Indeed, it appears that Mr. McWain was involved in criminal activity with defendant; therefore, it is doubtful that he would have risked incriminating himself by testifying. Second, even granting that Mr. McWain would have testified on defendant's behalf, the Government indicted defendant for possessing guns in the summer of 2009, several months before the record indicates Mr. McWain became involved with him in any criminal activity. The Government can make its case against defendant exclusively on J.H.'s testimony and photographic and video evidence, which Mr. McWain's testimony could have

10

done nothing to refute. Accordingly, defendant has not met his burden to show that the delay caused him actual, substantial prejudice.

### B. The Indictment's Delay

Even if defendant had been able to show actual, substantial prejudice stemming from the Government's delay, he is unable to meet the additional burden of showing that the Government delayed the indictment deliberately in order to gain a tactical advantage. As noted above, mere inaction or negligence on the Government's part will not show deliberate delay, Foxman 87 F.3d at 1223 n.2 (citing Stoner, 751 F.2d at 1543); Butler, F.2d 792 at 1534, and when the record is otherwise silent, there is no due process violation, see Foxman 87 F.3d at 1223 n.2 (citing Stoner, 751 F.2d at 1543). Besides bare speculation, defendant adduces no evidence suggesting deliberate delay.[5] Indeed, defendant's request for an evidentiary hearing, discussed infra, underscores this lack of evidence. As the record is otherwise silent, the Court finds that defendant has failed to show that the Government deliberately delayed bringing the Indictment.

---

[5] Defendant intimates that his unanswered e-mail is probative of deliberate delay. (See Def.'s Mot. at 6.) The Court finds this unpersuasive.

11

Accordingly, because defendant has failed to show that the Indictment's timing prejudiced him and that the Government deliberately delayed the Indictment to obtain a tactical advantage, he has failed to show that the Government violated his Fifth Amendment Due Process rights. See Butler, 792 F.2d at 1533. Because the Indictment was timely brought, see 18. U.S.C. § 3282(a), the Court declines to dismiss it pursuant to Federal Rule of Criminal Procedure 48(b).

### C.   Evidentiary Hearing

"A district court is not required to hold an evidentiary hearing on a pretrial motion." United States v. Horne, 198 F. App'x 865, 869 (11th Cir. 2006) (per curiam) (quoting United States v. Beard, 761 F.2d 1477, 1480 (11th Cir. 1985)). Courts may "'refuse a defendant's request for a . . . hearing . . . if the defendant fails to allege facts that, if proved, would require the grant of relief.'" Id. at 869-70 (quoting United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985)).

As set forth above, defendant has failed to allege any facts that would support a finding either that he was prejudiced or that the Government sought a tactical advantage by delaying his indictment. Consequently, the Court is under no obligation to conduct an evidentiary hearing and declines to do so. Thus, defendant's request for a hearing is **DENIED**.

12

## V. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that defendant's Preliminary Motion to Dismiss Indictment for Violation of the Due Process Clause [30] and Perfected Motion to Dismiss Indictment for Violation of the Due Process Clause [32] be **DENIED**.

**SO RECOMMENDED**, this 2nd day of November, 2011.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

UNITED STATES OF AMERICA

v.

ROBERT RANDOLPH,
        Defendant.

CRIMINAL ACTION FILE
NO. 4:11-CR-17-RLV-WEJ

**ORDER FOR SERVICE OF
NON-FINAL REPORT AND RECOMMENDATION**

Let this Non-Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and the Court's Local Criminal Rule 58.1(A)(3)(a), be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Non-Final Report and Recommendation within fourteen days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the District Court. If no objections are filed, the Non-Final Report and Recommendation may be adopted as the opinion and order of the District Court, and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Non-Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 2nd day of November, 2011.

/s/ Walter E. Johnson
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)